## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DALE THEIS, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Civil Action No. |
| *v.* | |
| AVG TECHNOLOGIES USA, INC., a Delaware corporation, | **CLASS ACTION COMPLAINT** |
| *Defendant.* | **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Dale Theis ("Theis" or "Plaintiff"), brings this Class Action Complaint against Defendant AVG Technologies USA, Inc. ("AVG" or "Defendant") based upon Defendant's practice of defrauding consumers through the design and sale of certain of its utility software products. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      AVG is a multi-national developer of computer software products and a self-proclaimed leader in the security software industry. AVG markets and sells a variety of products that it claims improve the performance and/or security of a consumer's personal computer ("PC"), including its PC Tuneup, Internet Security 2012, Anti-Virus 2012, LiveKive$^{TM}$, Mobilation$^{TM}$, and Family Safety$^{TM}$ software.

2.      At issue in this lawsuit is AVG's PC Tuneup ("PC Tuneup") software. Through its website and other marketing materials, AVG represents that PC Tuneup can identify, report

and repair a wide range of system errors, privacy and security threats, and other computer problems. Specifically, AVG asserts that PC Tuneup will boost Internet and computer speeds, eliminate freezing and crashing, speed up hard drives, protect users' privacy and security, and otherwise "restore your PC to peak performance."

3.      Unfortunately for consumers, AVG's representations are false.

4.      In reality, the assertions on AVG's website and in its marketing materials do not correspond with PC Tuneup's functionality and are part of a uniform deceptive scheme meant only to mislead consumers into purchasing the software. First, AVG represents to the consumer that PC Tuneup identifies and fixes computer errors and privacy and security threats, improves computer and Internet speeds, and drastically increases computer stability and functionality. After the consumer installs PC Tuneup, the software invariably reports, in alarmist fashion, that severe errors exist on the computer and need repair.

5.      As explained more fully herein, PC Tuneup *does not conduct any meaningful evaluation* of these supposed "errors." Instead, AVG intentionally designed PC Tuneup to invariably and ominously report that the consumer's computer is afflicted by "severe" problems, and to advise that weekly diagnostic scans are recommended to detect and "fix" these supposed problems. However, because the initial trial version of PC Tuneup expires after only 24 hours, consumers are required to pay AVG for its continued use.

6.      As a result of AVG's marketing materials and in-software representations, the average consumer reasonably believes that the "errors" detected by PC Tuneup correspond with the problems that AVG represents PC Tuneup will fix, and that these "severe" errors are affecting their PC's performance, stability, privacy and security. The consumer further believes that "weekly scans" are necessary to identify, remove and protect against these problems, as

instructed by the software. In this way, AVG fraudulently induces them into purchasing the full, registered version of PC Tuneup—typically at a cost of $29.99.

7.      AVG holds itself out as a reputable industry leader in developing software to protect consumers' computers. Because average consumers lack the technical expertise to understand the underlying functionality of AVG's software, they trust AVG to convey the utility of its products honestly, and to develop software that truthfully reports computer problems. AVG betrayed that trust, and as a result, thousands of consumers have been tricked into purchasing its unlawfully marketed and designed PC Tuneup software.

## PARTIES

8.      Plaintiff Dale Theis is a natural person and citizen of the State of Minnesota.

9.      Defendant AVG Technologies USA, Inc. is a Delaware corporation with its headquarters and principal place of business located at One Executive Drive, Suite 302, Chelmsford, Massachusetts 01824.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative class is a citizen of a state different than Defendant, (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

11.      This Court has personal jurisdiction over AVG because it conducts business in Massachusetts and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from Massachusetts. Additionally, AVG is headquartered in Chelmsford, Massachusetts.

12.      Venue is proper in this District because AVG maintains its headquarters in this

District and because the improper conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

## FACTUAL BACKGROUND

### I.     A brief overview of AVG Technologies USA, Inc.

13.     Founded in 1991, AVG develops a variety of computer software products that purportedly repair consumers' computers, and boasts of employing a staff comprised of the "world's leading experts in software development, threat detection, threat prevention and risk analysis."[1] AVG further claims that its "software and online services" provide "peace of mind to more than 108 million active users by simplifying, optimizing and securing their Internet experiences."[2]

14.     By its own proclamations, AVG is "recognized as one of the biggest players in the security software market" and "currently holds corporate offices in Europe, the US and the UK."[3]

### II.    AVG tricks consumers into purchasing PC Tuneup through a common deceptive scheme.

15.     If a consumer searches the World Wide Web for software to increase computer speed or performance, remove harmful errors, or to protect privacy, that consumer will likely encounter advertisements for PC Tuneup. Upon clicking a hyperlink to and arriving at one of AVG's websites, the consumer is then presented with AVG's misrepresentations about PC Tuneup's utility and functionality.

---

[1]     *See* Company Profile, available at: http://free.avg.com/us-en/company-profile (last visited Apr. 5, 2012).

[2]     *See* Investor Relations Home, available at: http://investors.avg.com/phoenix.zhtml ?c=250967&p=irol-IRHome (last visited Apr. 5, 2012).

[3]     *See* Company Profile, available at: http://free.avg.com/us-en/company-profile (last visited Apr. 5, 2012).

16.     AVG represents to the consumer that PC Tuneup identifies and fixes computer errors and privacy and security threats, improves computer and Internet speeds, and increases computer stability and functionality. In-software displays inform the user that the registered version of PC Tuneup can improve the user's Internet speed "by up to 300%," and "free up RAM" to improve computer performance.

17.     In short, AVG promises that PC Tuneup will scan the user's computer, accurately report existing errors and threats—which purportedly correspond with the problems Defendant represents that the software will detect—and repair those errors and threats.

18.     In reality, AVG intentionally designed PC Tuneup to artificially inflate the number of errors reported on a user's computer, mischaracterize innocuous computer files as harmful, and misrepresent the overall health and security status of a computer. Moreover, PC Tuneup cannot possibly perform some of the beneficial tasks represented by AVG (e.g., speeding up a user's Internet connection by 300%).

**III.    AVG designed PC Tuneup to artificially inflate errors and arbitrarily characterize them as "severe" to induce consumers to purchase the software.**

19.     AVG's website offers users the option to either download a free trial version of PC Tuneup, or to purchase the software outright.

20.     After a consumer downloads and installs the free version of PC Tuneup, the software performs a free diagnostic scan of the user's computer, a process that supposedly detects the presence and severity of harmful errors.

21.     Upon completing the free scan, PC Tuneup warns that the consumer's computer suffers from numerous "severe errors" and offers to "fix" these purported problems.

22.     Upon viewing PC Tuneup's diagnostic scan results, the average consumer reasonably believes the software's representations—i.e., that AVG designed the software to and

that it, in fact, has truthfully and accurately identified harmful computer problems. Unfortunately for consumers, this is not the case.

23.     After he was tricked into purchasing PC Tuneup, Plaintiff, through his attorneys, engaged a computer forensics expert to examine PC Tuneup. The expert's investigation confirmed that PC Tuneup *always* reports that a user's computer is afflicted by "severe" errors that need repair, and that weekly scans are recommended to identify and eliminate these supposed threats. AVG intended these alarmist results to scare consumers into believing that their computer is damaged, and that purchase of the full version of PC Tuneup is necessary to ensure that these problems are remedied in the future. Worse, Plaintiff's expert determined that many of the purported errors PC Tuneup identifies *are not credible threats* to a computer's functionality.

24.     The expert's investigation further uncovered that AVG programmed PC Tuneup to, *inter alia*, (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous items as severe, and (iv) inform the user that "weekly scans" using the software are recommended.

25.     Through the deceptive scheme described above, AVG has profited, and continues to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that the purchase and continued use of PC Tuneup is necessary to "fix" these problems.

## IV.     Plaintiff Theis's Experience.

26.     In April 2011, Plaintiff Theis performed an Internet search for software that would enhance his computer's performance. Theis clicked on a link offering a free trial version

of PC Tuneup through Defendant's website, www.avg.com. Theis then navigated to AVG's website, where AVG represented that PC Tuneup would identify, report and repair a wide range of system errors, privacy and security threats, and other computer problems; and, that PC Tuneup would boost Internet and computer speeds, eliminate freezing and crashing, speed up hard drives, and otherwise optimize the performance of his computer.

27.     In reliance upon AVG's representations about the utility and functionality of PC Tuneup, Theis agreed to download a free trial version of the software. After downloading the free trial version of PC Tuneup and initiating the diagnostic scan, the software reported that numerous "severe" errors were present on Theis's computer. PC Tuneup then "fixed" these errors, and advised Theis that he should perform weekly diagnostic scans of his computer.

28.     After his 24-hour trial of the software expired, and believing that PC Tuneup's initial diagnosis and representations were honest and accurate, Theis agreed to and paid AVG to purchase the full version of PC Tuneup in an effort to continue to protect his computer from and repair such errors and threats in the future. However, as discussed above, because PC Tuneup fabricated and/or dramatically overstated the errors and threats present on his computer—and was designed to always return these results—Theis was misled into believing that his computer was at-risk, and that he needed to pay to register PC Tuneup in order to protect it in the future.

29.     But for AVG's misrepresentations in its marketing materials, on its website, and within the PC Tuneup software itself—namely, that (i) the software would accurately detect, report and repair harmful errors and other problems, (ii) his computer had numerous "errors," (iii) several innocuous items on his computer were damaging, (iv) his computer required weekly scans, and (v) purchasing the full version of PC Tuneup would ensure continued repair of and protection from these purported harmful errors—Plaintiff would not have purchased the full

version of PC Tuneup.

## CLASS ALLEGATIONS

30.     **Class Definition:** Plaintiff Theis brings this action pursuant to Fed. R. Civ. P.

23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as

follows:

> All individuals and entities in the United States and its territories that have
> purchased PC Tuneup from AVG Technologies USA, Inc.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents,

successors, predecessors, and any entity in which Defendant or its parents have a controlling

interest and their current and former employees, officers, and directors, (2) the Judge or

Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's

immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released,

and (5) the legal representatives, successors, or assigns of any such excluded person.

31.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this

time, but on information and belief, AVG has sold its PC Tuneup software to thousands of Class

members throughout the country, making joinder of each individual member impracticable.

Ultimately, the Class members will be easily identified through AVG's records.

32.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the

Class. Plaintiff and the Class sustained damages as a result of AVG's uniform wrongful conduct

during transactions with Plaintiff and the Class. Plaintiff's claims are typical of the claims of all

of the other members of the Class.

33.     **Adequate Representation:** Plaintiff will fairly and adequately represent and

protect the interests of the Class, and has retained counsel competent and experienced in

complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and AVG has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

34.    **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

   a)    whether AVG intentionally designed its PC Tuneup software to automatically report that harmful errors and threats exist on a user's computer, regardless of the computer's actual condition;

   b)    whether AVG intentionally misrepresented the functionality of its PC Tuneup software;

   c)    whether AVG's conduct described herein constitutes breach of express warranties under the Massachusetts Commercial Code;

   d)    whether AVG's conduct described herein constitutes breach of implied warranties of merchantability under the Massachusetts Commercial Code;

   e)    whether AVG's conduct described herein constitutes fraudulent inducement;

   f)    whether AVG's conduct described herein constitutes a breach of contract; and

   g)    whether AVG unjustly received and/or continues to receive money as a result of its conduct described herein, and whether under principles of equity and good conscience, AVG should be permitted to retain those monies.

35.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of

individual prosecution of the complex litigation necessitated by AVG's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from AVG's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

36.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because AVG has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. AVG's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on AVG's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. AVG has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

37.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranties**
**Pursuant to Mass. Gen. Laws ch. 106 § 2-313**
**(On Behalf of Plaintiff and the Class)**

38.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39.     Licenses to use consumer software are "goods" within the meaning of Uniform Commercial Code Art. 2 and Mass. Gen. Laws ch. 106 § 2-105. Accordingly, when AVG sold Theis a license to use its PC Tuneup software in April 2011, the transaction was a sale of goods within the meaning of the UCC Art. 2, and Mass. Gen. Laws ch. 106 § 2-105.

40.     Under Mass. Gen. Laws ch. 106 § 2-313, AVG's sale of PC Tuneup included express warranties created by AVG's affirmations of fact and promises made through its advertising, websites, and in-software representations.

41.     Through its website and marketing materials, AVG expressly represented to Plaintiff and the Class that PC Tuneup would "scan your registry to identify and repair issues that may cause freezing and crashing." AVG further represented that PC Tuneup would "Fix cluttered and corrupted registries that consume memory, slow applications down, and cause overall stability problems," "Boost your Internet speed," "Optimize disk speeds," "Protect your privacy," "Recover accidentally deleted files," "Permanently delete files and wipe disks," and "Monitor hard drive health and space."

42.     Likewise, after Theis installed PC Tuneup, the software represented that his computer had dozens of "severe" errors, and that the software would repair the supposed errors. PC Tuneup also informed Theis that weekly scans of his computer with the software were recommended in order to repair and protect against such problems in the future.

43.     AVG's affirmations and promises to Plaintiff and the Class related to an essential

characteristic of the PC Tuneup software—namely, its ability to accurately detect, report and repair computer errors, as well as improve the overall security and functionality of Plaintiff's and the Class members' PCs.

44.     Plaintiff and the Class relied upon these affirmations and promises by paying AVG to purchase and registering a full version of PC Tuneup. AVG's representations described herein formed the basis of the bargain between the parties, in that Plaintiff and the Class reasonably believed that they were purchasing software that would honestly and accurately detect, report and repair harmful computer errors and threats, and fix them. But for AVG's affirmations and representations, Plaintiff and the Class would not have purchased PC Tuneup.

45.     AVG breached these express warranties by designing PC Tuneup such that it did not perform any meaningful diagnostic test on Plaintiff's or the Class's computers, and instead falsely identified and exaggerated the presence of errors and threats on the computers.

46.     AVG's breach of express warranties injured Plaintiff and the Class because they purchased a product of diminished value—software that does not actually perform the beneficial tasks represented through AVG's affirmations and promises.

47.     As a direct and proximate result of AVG's breach of express warranties, Plaintiff and the Class members suffered damages—including in the form of the fees paid to AVG to purchase PC Tuneup—in an amount to be proven at trial. AVG has actual or constructive notice of such damages.

48.     Accordingly, Plaintiff and the Class members seek actual and compensatory damages to the maximum extent available.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### Pursuant to Mass. Gen. Laws ch. 106 § 2-314
### (On Behalf of Plaintiff and the Class)

49.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50.     Licenses to use consumer software are "goods" within the meaning of Uniform Commercial Code Art. 2 and Mass. Gen. Laws ch. 106 § 2-105. Accordingly, when AVG sold Theis a license to use its PC Tuneup software in April 2011, the transaction was a sale of goods within the meaning of the UCC Art. 2, and Mass. Gen. Laws ch. 106 § 2-105.

51.     Pursuant to Mass. Gen. Laws ch. 106 § 2-314, a contract for the sale of goods contains an implied warranty that the goods are merchantable. To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." § 2-314.

52.     Plaintiff and the Class, on the one hand, and AVG, on the other, entered into valid and enforceable agreements whereby Plaintiff and the Class agreed to purchase, and AVG agreed to provide software that would honestly and accurately detect, report and repair harmful computer errors and threats.

53.     Implied within those contracts was AVG's representation that the PC Tuneup software would, in fact, be fit for identifying, reporting and repairing harmful errors and threats found on a user's computer. Likewise, AVG's online representations and representations within the software itself, imply that the software is designed to repair a computer, clean its registry, and improve its performance and security.

54.     AVG breached the implied warranty of merchantability because, in actuality, PC Tuneup is not fit to repair a computer, clean its registry, or improve its performance and security.

Rather, PC Tuneup is designed to identify "false positives" (i.e., to report problems that do not in fact exist) and/or to misrepresent the severity of problems found on the user's computer. PC Tuneup is, therefore, unfit to perform the primary functions for which Plaintiff and the Class agreed to purchase it.

55.     At the time AVG sold PC Tuneup to Plaintiff and the Class, the software was not reasonably suitable for diagnosing and repairing computer errors and threats, cleaning computer registries, or improving computer performance and security.

56.     By using PC Tuneup as instructed by AVG, Plaintiff and the Class used the software in a manner that AVG intended and/or reasonably could have foreseen.

57.     AVG's breach of the implied warranty of merchantability injured Plaintiff and the Class because they purchased a product of diminished value—software that does not honestly and accurately diagnose and repair computer errors and threats, clean computer registries, or improve computer performance and security.

58.     As a direct and proximate result of AVG's breach of the implied warrant of merchantability, Plaintiff and the Class suffered damages—including in the form of the fees paid to AVG to purchase PC Tuneup—in an amount to be proven at trial. AVG had actual or constructive notice of such damages.

59.     Accordingly, Plaintiff and the Class members seek actual and compensatory damages to the maximum extent allowable.

**<u>THIRD CAUSE OF ACTION</u>**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Class)**

60.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

61.     As described with particularity in paragraphs 13 through 29 and throughout all

Counts of this Complaint, AVG has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

62.     To induce Plaintiff and the Class to purchase PC Tuneup, AVG affirmatively represented to Plaintiff and the Class that PC Tuneup possessed certain utility and functionality. Specifically, AVG represented that PC Tuneup would honestly and accurately identify, report and repair computer errors and privacy and security threats, increase computer and Internet speeds, and increase computer stability and functionality. Further, through the software itself, AVG affirmatively represented that PC Tuneup had performed a meaningful diagnostic scan, that Plaintiff's and the Class's computers had numerous serious errors, and that purchasing the full version of PC Tuneup would repair and protect against such errors and threats in the future.

63.     AVG's representations were, in fact, false. In particular, PC Tuneup does not honestly identify and repair computer errors or privacy and security threats, increase computer and Internet speeds, or increase computer stability and functionality as represented. Likewise, PC Tuneup's "free diagnostic" scan results were false because PC Tuneup did not perform an actual evaluation of errors existing on Plaintiff's and the Class's computers.

64.     The utility of a consumer good is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a good.

65.     Any deception or fraud related to the utility of a good is materially misleading.

66.     As PC Tuneup's developer, AVG knew that its representations regarding PC Tuneup's utility and functionality were false. Further, AVG designed its public representations specifically to mislead consumers about PC Tuneup's utility, and intentionally programmed its software to falsely report and exaggerate the existence of errors and to deceive users about the status of their computers. AVG intended that its misrepresentations would induce consumers to

15

purchase its PC Tuneup software.

67.     As consumers lacking the requisite technical expertise to independently gauge PC Tuneup's underlying functionality, and taking PC Tuneup's statements at face value, Plaintiff and the Class justifiably relied on AVG's representations by purchasing and registering a full version of the PC Tuneup software. Plaintiff and the other members of the Class would not have purchased and registered a full version of PC Tuneup but for AVG's representations that the software would perform the beneficial tasks described herein above, and its in-software representations that their computers had serious errors and needed ongoing repair.

68.     By using deceptive marketing tactics that misrepresent PC Tuneup's actual utility, and inducing Plaintiff and the Class to purchase PC Tuneup based on those misrepresentations, AVG has engaged in fraudulent practices designed to mislead and deceive consumers.

69.     As a direct and proximate result of AVG's fraudulent conduct, Plaintiff and the Class suffered damages—including in the form of the fees paid to AVG for the purchase of the full version of the PC Tuneup software—in an amount to be determined at trial. AVG had actual or constructive notice of such damages.

70.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

71.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.     Plaintiff and the Class members, on the one hand, and AVG, on the other, entered into valid and enforceable agreements, whereby AVG offered to sell, and Plaintiff and the Class members agreed to purchase, software that would accurately identify, report and repair legitimate

computer errors and other problems on Plaintiff's and the Class's computers, as well as improve the overall health and functionality of those computers.

73.     Plaintiff and the Class paid, and AVG accepted, the purchase price for the full version of PC Tuneup. Therefore, Plaintiff and the Class performed their obligations under the contracts.

74.     Defendant breached its contractual obligations by providing Plaintiff and the Class with software that failed to perform a meaningful analysis of their computers and that falsely identified and vastly overstated errors and threats on the computers.

75.     AVG's breaches of contract proximately caused Plaintiff and the Class economic injury and other damages—including in the form of the fees they paid to purchase a full version of the PC Tuneup software—because they purchased a good that does not perform as AVG represented, and lacks the promised and paid-for utility.

76.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

77.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78.     Plaintiff and the Class purchased PC Tuneup and allowed AVG to install the software on their computers in order to receive the purported benefits offered by PC Tuneup.

79.     AVG's agreement to sell software to diagnose and remove errors and threats from Plaintiff's and the Class's computers in exchange for fees is a valid and enforceable contract between Plaintiff and the Class on the one hand, and Defendant on the other.

80.     AVG breached the provisions of its contracts with Plaintiff and the Class by failing to honor its obligation to provide software that honestly and accurately performed diagnostic and remedial operations.

81.     Massachusetts law recognizes the implied covenant of good faith and fair dealing in every contract.

82.     Thus, implicit in the contracts between AVG and Plaintiff and the Class were provisions that prevented AVG from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the contract. Further, AVG was obligated to comply with Mass. Gen. Laws ch. 106 §§ 2-313 and 2-314.

83.     AVG breached the implied covenant of good faith and fair dealing by selling Plaintiff and the Class software that did not and could not perform as represented. Because the software did not function as promised, AVG deprived Plaintiff and the Class of the opportunity to enjoy the benefits contracted for, namely honest and accurate diagnosis and repair of their computers.

84.     AVG's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury and damages to Plaintiff and the Class—including in the form of the fees they paid to purchase the full version of PC Tuneup—because they purchased a good that does not have the promised and paid-for utility.

85.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(in the alternative to Breach of Contract and Breach of the
Implied Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Class)**

86.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

87.     Plaintiff expressly brings this claim in the alternative to his claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

88.     If the Court finds Plaintiff's and the Class's contracts with AVG invalid or unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy at law.

89.     Plaintiff and the Class members each conferred a benefit upon AVG in the form of the monies they paid to AVG to purchase the full version of PC Tuneup.

90.     AVG knowingly received and retained those benefits from Plaintiff and the Class under circumstances that would render it unjust to allow AVG to retain such benefits.

91.     In exchange for PC Tuneup's purchase price, Plaintiff and the Class members each reasonably expected to receive the benefit of software that would accurately identify, report and repair computer errors and threats, as represented by AVG.

92.     Because of its representations to Plaintiff and the Class, AVG knew or should have known that Plaintiff and the Class purchased PC Tuneup with the reasonable expectation of receiving the software's aforementioned benefits in return. AVG knew that Plaintiff's and the Class's expectation was inaccurate—and AVG was responsible for that inaccuracy—yet AVG sold PC Tuneup to Plaintiff and the Class without correcting that expectation.

93.     By falsely informing Plaintiff and the Class that they needed to purchase PC Tuneup to repair problems on their computers that did not exist or were dramatically overstated, AVG knowingly received and appreciated benefits at the expense, and to the detriment, of Plaintiff and the Class.

94.     AVG's receipt of monies from Plaintiff and the Class allowed it to utilize those monies for its own purposes, without expending resources to perform its obligations to them.

95.     Under principles of equity and good conscience, AVG should not be permitted to retain the monies Plaintiff and the Class members paid to and were unjustly received by AVG as a result of its misconduct alleged herein.

96.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class seek restitution and disgorgement of all monies unlawfully obtained by AVG through its misconduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dale Theis, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Dale Theis as Class Representative, and appointing his counsel as Class Counsel;

B.     Awarding damages, including actual, compensatory, statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

C.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*: (i) an order prohibiting AVG from engaging in the wrongful and unlawful acts described herein, (ii) requiring AVG to disclose and admit the wrongful and unlawful acts described herein, and (iii) requiring AVG to fully disclose the true nature of its software products now and in the future;

D.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

allowable; and,

F.      Awarding such other and further relief as equity and justice may require.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: May 22, 2012                **DALE THEIS**, individually and on behalf of all
others similarly situated,

By:  /s/ David Pastor
     David Pastor (BBO # 391000)
     dpastor@pastorlawoffice.com
     PASTOR LAW OFFICE, LLP
     63 Atlantic Avenue, Third Floor
     Boston, Massachusetts 02110
     Telephone: (617) 742-9700
     Facsimile: (617) 742-9701

     JAY EDELSON*
     jedelson@edelson.com
     RAFEY S. BALABANIAN*
     rbalabanian@edelson.com
     BENJAMIN H. RICHMAN*
     brichman@edelson.com
     CHANDLER R. GIVENS*
     cgivens@edelson.com
     EDELSON MCGUIRE, LLC
     350 North LaSalle Street, Suite 1300
     Chicago, Illinois 60654
     Telephone: (312) 589-6370
     Facsimile: (312) 589-6378

     *Pro hac vice admission to be sought

     **Counsel for Plaintiff**

21