UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHRISTOPHER ROTTNER, individually and :
on behalf of all others similarly situated,
                                                :
                           Plaintiff,           :   Civil Action
                                                :   No. 12-10920-RGS
            v.                                  :
                                                :
AVG TECHNOLOGIES USA, INC., a                   :
Delaware corporation, AVG TECHNOLOGIES :
CZ, S.R.O., a Czech company, and               :
AUSLOGICS SOFTWARE PTY LTD.,                    :
an Australian company,                          :
                                                :
                           Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Christopher Rottner ("Rottner" or "Plaintiff") brings this Second Amended Class

Action Complaint ("Complaint") against Defendants AVG Technologies USA, Inc. ("AVG

US"), AVG Technologies CZ, s.r.o. ("AVG CZ"), and Auslogics Software Pty Ltd.

("Auslogics") (collectively "Defendants") based upon Defendants' practice of defrauding

consumers through the design and sale of certain utility software products. Plaintiff, for his

Complaint, alleges as follows upon personal knowledge as to himself and his own acts and

experiences and, as to all other matters, upon information and belief, including investigation

conducted by his attorneys.

### NATURE OF THE ACTION

1.     Defendants, working together and separately, operate a fraudulent scheme

designed to trick consumers into purchasing their computer utility software known as AVG PC

TuneUp ("PC TuneUp"). Through the use of misleading advertising, packaging materials and

deceptive "diagnostic" scans, Defendants exploit legitimate consumer concerns about computer performance and privacy for the sole purpose of selling Defendants' software products. More specifically, Defendants represent that PC TuneUp identifies and repairs a wide range of system errors, privacy and security threats, will boost Internet and computer speeds, eliminate freezing and crashing, speed up hard drives, and otherwise "restore [a] PC to peak performance."

2.        In reality, PC TuneUp does not function as Defendants represent—the software is actually designed to detect innocuous items as "severe" errors that are purportedly harming the PC's performance.

3.        With regard to the relationship between the Defendants, the technology that drives PC TuneUp is developed for and licensed to AVG CZ by Defendant Auslogics. AVG CZ then markets and sells the software to U.S. consumers online through www.avg.com—most often in the form of a free 24-hour trial version of the software, which *appears* to detect errors and other problems that exist on the user's computer.

4.        For its part, AVG CZ's sister-company and U.S. arm, AVG US, assists in the maintenance of the www.avg.com website by reviewing marketing materials and licensing agreements, and further sells the software through third party resellers, both online and in packaged form at brick-and-mortar stores, such as Office Depot and Walmart.

5.        As explained more fully herein, neither the free trial nor full versions of PC TuneUp *conduct any meaningful evaluation* of the condition of a user's computer. Instead, Auslogics intentionally designed the software to invariably and ominously report that consumers' computers are afflicted by "severe" problems, and to advise that weekly diagnostic scans are recommended to detect and "fix" these supposed problems. As a result, consumers are tricked into paying for, and continuing to use, software that does not function as represented by

Defendants.

6.      Defendants hold themselves out as reputable industry leaders in developing software to protect and enhance consumers' computers. Because average consumers lack the technical expertise to understand the underlying functionality of Defendants' software, they trust Defendants to convey the utility of their products honestly, and to develop software that truthfully reports and repairs computer problems. Defendants betrayed that trust, and as a result, thousands of consumers have been damaged by purchasing their fraudulent software.

## PARTIES

7.      Plaintiff Christopher Rottner is a natural person and citizen of the State of California.

8.      Defendant Auslogics Software Pty Ltd. is an Australian company with its headquarters located at 495 Pacific Highway, Crows Nest NSW 1585, Australia. Auslogics designs, creates, sells, and licenses computer software products and technology, including the technology underlying the PC TuneUp software. Auslogics conducts business throughout the United States.

9.      Defendant AVG Technologies CZ, s.r.o. is a Czech company and wholly owned subsidiary of AVG Technologies N.V., with its headquarters located at Holandskà 4, 639 00 Brno, Czech Republic. AVG CZ licenses the Auslogics technology utilized by PC TuneUp and is responsible for marketing and selling PC TuneUp within the U.S. through the www.avg.com website. AVG CZ does business throughout the United States, including this District.

10.     Defendant AVG Technologies USA, Inc. is a Delaware corporation and wholly owned subsidiary of AVG Technologies N.V., with its headquarters and principal place of business located at One Executive Drive, Suite 302, Chelmsford, Massachusetts 01824. AVG US

is responsible for United States retail store sales and reseller channel sales of PC TuneUp, as well as assisting in the maintenance of the www.avg.com website—including reviewing marketing materials and licensing agreements for sales of PC TuneUp on the website. AVG US does business throughout the State of Massachusetts, including this District, and the United States.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different than Defendants, (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

12.     This Court has personal jurisdiction over Defendants because Defendants conduct business in Massachusetts and the unlawful conduct alleged in this Complaint, in part, occurred in, was directed to, and/or emanated from Massachusetts. In particular, AVG US was involved at least in part in the decision-making process regarding public representations about PC TuneUp's functionality. Additionally, AVG US is headquartered in Chelmsford, Massachusetts.

13.     Venue is proper in this District because AVG US maintains its headquarters in this District, and the injuries to Plaintiff and the putative Class, in part, arose in this District. Venue is additionally proper because Defendants transact significant business in this District, including soliciting consumer business, and entering into consumer transactions.

## FACTUAL BACKGROUND

**I.     A Brief Overview of the Defendants.**

*The AVG Brand and its Sister Companies.*

14.     Founded in 1991, the AVG brand—which is controlled by companies like

Defendants AVG US and AVG CZ—develops a variety of computer software products that will allegedly repair consumers' computers. AVG boasts of employing a staff comprised of the "world's leading experts in software development, threat detection, threat prevention and risk analysis."[1] The company further claims that its "software and online services" provide "peace of mind to more than 108 million active users by simplifying, optimizing and securing their Internet experiences."[2]

15.     According to AVG, it is "recognized as one of the biggest players in the security software market" and "currently holds corporate offices in Europe, the US and the UK."[3]

16.     AVG CZ is AVG's primary European business entity. AVG CZ is the registered administrator and operator of the www.avg.com through which many of AVG's software products, such as the PC TuneUp software, are marketed and sold. AVG CZ also licenses the technology that is incorporated into the PC TuneUp software at issue here.

17.     AVG US is AVG's North American arm. AVG US is responsible for United States retail store sales and reseller channel sales of AVG software, such as the PC TuneUp software.  Additionally, AVG US participates in the maintenance of the www.avg.com website, reviews the marketing statements made on the site, and reviewed the licensing agreements between Auslogics and AVG CZ for the technology underlying the PC TuneUp software at issue here.

---

[1]     *See* Company Profile, available at: http://free.avg.com/us-en/company-profile (last visited Apr. 5, 2012).

[2]     *See* Investor Relations Home, available at: http://investors.avg.com/phoenix.zhtml ?c=250967&p=irol-IRHome (last visited Apr. 5, 2012).

[3]     *See* Company Profile, available at: http://free.avg.com/us-en/company-profile (last visited Apr. 5, 2012).

18.     Both AVG US and AVG CZ are wholly owned subsidiaries of and commonly controlled by AVG Technologies N.V. Likewise, the companies currently (and have in the past) shared numerous corporate officers, including their current Chief Executive Officer, J.R. Smith; their current Chief Operating Officer, Ralph Edward Clenton Richardson; AVG US's current Chief Web & Customer Officer and AVG CZ's current President and General Manager, R. David Ferguson; and, in varying capacities, John Little (AVG CZ's current Chief Financial Officer and AVG US's former Director, President, and Chief Executive Officer).

*Auslogics*.

19.     Founded in 2008, Auslogics describes itself as "a leading developer and publisher of computer maintenance and optimization software for Microsoft Windows."[4] According to Auslogic, it's software "is used by over 10,000,000 people worldwide" and includes "computer optimization, Internet speed-up, disk and registry maintenance and defragmentation tools; virus and spyware protection; and even emergency recovery tools."[5]

20.     Auslogics is responsible for designing and developing the technology underlying the PC TuneUp software at issue, which it then licensed for sale to AVG CZ.

## II.     Defendants Trick Consumers into Purchasing PC TuneUp Through a Common Deceptive Scheme.

21.     AVG CZ and AVG US (collectively, "AVG") promote PC TuneUp through both sponsored advertising on the Internet and on the software's packaging materials as being capable of increasing computer speed or performance, removing harmful errors, and protecting users' privacy.

---

[4]     *See* About, available at: http://www.auslogics.com/en/about (last visited Sept. 5, 2012).

[5]     *Id.*

22.     For example, if a consumer searches the World Wide Web for software to enhance their computer's performance, he or she will likely encounter advertisements for PC TuneUp. Upon clicking a hyperlink to and arriving at one of AVG's websites, the consumer is then presented with Defendants' misrepresentations about PC TuneUp's utility and functionality.

23.     AVG represents to the consumer that PC TuneUp identifies and fixes computer errors and privacy and security threats, improves computer and Internet speeds, and increases computer stability and functionality. In-software displays also inform the user that the registered version of PC TuneUp can improve the user's Internet speed "by up to 300%," and "free up RAM" to improve computer performance.

24.     More specifically, through its marketing materials both on the www.avg.com website and PC TuneUp's packaging in retail stores, AVG represents that PC TuneUp is designed to:

- "Boost your Internet speed";

- "Eliminate freezing and crashing";

- "Optimize disk speeds";

- "Protect your privacy";

- "Monitor hard drive health and space"; and

- "Restore your PC to peak performance."

25.     Regardless of where the consumer encounters AVG's representations about the software's utility—whether it be online or in brick and mortar stores—the representations made by AVG are essentially the same. AVG promises that PC TuneUp will scan the user's computer, accurately report existing errors and threats—which purportedly correspond with the problems the software will detect—and repair those errors and threats.

26.     In reality though, Defendants intentionally designed PC TuneUp to artificially inflate the number of errors reported on a user's computer, mischaracterize innocuous computer files as harmful, and misrepresent the overall health and security status of a computer. Moreover, PC TuneUp cannot possibly perform some of the beneficial tasks represented by Defendants (e.g., speeding up a user's Internet connection by 300%).

III.    **Despite its Representations to the Contrary, AVG US is Directly Involved in the Marketing and Sale of PC TuneUp Through the www.avg.com Website.**

27.     In this litigation, AVG US has represented that it has no involvement in the maintenance of the www.avg.com website and the representations regarding PC TuneUp published on the site. Those representations are false.

28.     Indeed, in addition to sharing the very same corporate officers who were responsible for making the ultimate design, marketing, and sales decisions with respect to PC TuneUp, AVG US was responsible for reviewing the marketing materials published on the www.avg.com website, including those described in Paragraph 24 above.

29.     Likewise, as a wholly owned subsidiary of AVG Technologies N.V., AVG US is a party to the www.avg.com Privacy Policy, which expressly states:

> For the purposes of this Privacy Policy, AVG Technologies shall mean AVG Technologies CZ, s.r.o. or any other company controlled by, controlling or under common control [with it].[6]

30.     AVG US is also listed as the recommended contact for U.S. consumers visiting the www.avg.com website.[7]

---

[6]     *See* Privacy Policy, located at http://www.avg.com/us-en/privacy (last visited Sept. 5, 2012).

[7]     *See* Contacts, located at http://www.avg.com/us-en/contacts (last visited Sept. 5, 2012).

31.     And, again, AVG US was responsible for reviewing the licensing agreements between Auslogics and AVG CZ relating to the technology underlying the PC TuneUp software.

**IV.   In Addition to its Published Marketing Materials, AVG Offers Free 24-Hour Trials of PC TuneUp to Fraudulently Induce Consumers Into Purchasing the Software.**

32.     For consumers who do not first purchase the full version of the PC TuneUp software at a brick and mortar store or otherwise after viewing AVG's representations described above, the AVG website offers users the option to download a free trial version of PC TuneUp.

33.     After a consumer downloads and installs the trial version of PC TuneUp, the free software performs a diagnostic scan of the user's computer, a process that supposedly detects the presence and severity of harmful errors.

34.     Upon completing the free scan, PC TuneUp warns that the consumer's computer suffers from numerous "severe errors" and offers to "fix" these purported problems.

35.     Upon viewing PC TuneUp's diagnostic scan results, the average consumer reasonably believes the software's representations—i.e., that Defendants designed the software to and that it, in fact, has truthfully and accurately identified harmful computer problems. Unfortunately for consumers, this is not the case.

36.     After the 24-hour trial period ends, the software recommends that users should continue weekly diagnostic scans and that they should purchase the full version of the software to do so.

**V.    Defendants Designed PC TuneUp to Artificially Inflate Errors and Arbitrarily Characterize Them as "Severe" to Induce Consumers to Purchase the Software.**

37.     Plaintiff, through his attorneys, has engaged a computer forensics expert to examine PC TuneUp. The expert's investigation confirmed that the free version of PC TuneUp *always* reports that a user's computer is afflicted by "severe" errors that need repair, and that

weekly scans are recommended to identify and eliminate these supposed threats. Defendants intended these alarmist results to scare consumers into believing that their computer is damaged, and that purchase of the full version of PC TuneUp is necessary to ensure that these problems are remedied in the future. Worse, Plaintiff's expert determined that many of the purported errors PC TuneUp identifies *are not credible threats* to a computer's functionality at all.

38.     Once purchased, the full versions of the software operate (and were intentionally designed by Defendants to operate) in an identically deceptive manner.

39.     The expert's investigation further uncovered that Defendants programmed both the free and full versions of PC TuneUp to, *inter alia*, (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous items as severe, and (iv) inform the user that "weekly scans" using the software are recommended.

40.     The truth, however, is that neither the free nor full version of PC TuneUp actually performs any meaningful evaluation of the user's computer system, or of the supposed "errors" detected by the software, and does not perform the valuable tasks represented by Defendants through their websites, marketing and packaging materials, and in-software display screens.

41.     Through the deceptive scheme described above, Defendants have profited, and continue to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that the purchase and continued use of PC TuneUp is necessary to "fix" these problems.

**VI.     Defendants' are not Alone in Their Fraudulent Conduct.**

42.     Unfortunately for consumers, Defendants are not alone in their use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the utility

software industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers—like Defendants and their competitors—have been called to account for their profiting on the backs of consumers who are unable to identify the fraudulent technological design and methodologies underlying this type of supposedly performance-enhancing software.

43.     Indeed, numerous lawsuits have been filed against well-known competitors of Defendants (e.g., Symantec Corp. and McAfee, Inc.)—including several by Plaintiff's counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software products. Several of those cases have resulted in classwide settlements and industry-changing modifications to the software products at issue—making their detection, reporting and repairing mechanisms far more transparent and more accurately informing consumers of the threats posed by existing errors on their computers—and still others are pending.

44.     Rather than make the necessary changes to their software so that it *actually* detects, reports and repairs harmful errors and problems on users' PCs, however, Defendants have remained steadfast in their fraudulent conduct and, to this day, continue to profit from it.

**VII.    Plaintiff Rottner's Experience.**

45.     In or around February 2012, Plaintiff Rottner's computer began malfunctioning. Specifically, he noticed that his computer's speed and performance had decreased significantly, so much so that the system would hang, or "freeze," when opening programs. His Internet connection also appeared slower than usual. In an effort to eliminate these problems, Rottner performed an Internet search for software designed to repair his computer and enhance its overall performance. In the search results, Rottner came across and clicked on an advertisement offering a free trial version of PC TuneUp through AVG's website, www.avg.com. After navigating to

the website, Rottner viewed AVG's representations that PC TuneUp would identify, report and repair a wide range of system errors, privacy and security threats, and other computer problems. In particular, the website claimed that PC TuneUp would "[b]oost [] Internet speed," "[e]liminate freezing and crashing," "[o]ptimize disk speeds," and otherwise perform such beneficial tasks as those described in Paragraph 24.

46.     In reliance upon AVG's representations about the utility and functionality of PC TuneUp, Rottner agreed to download a free trial version of the software. After downloading the free trial version of PC TuneUp and initiating the diagnostic scan, the software reported that numerous "severe" errors were present on his computer. PC TuneUp then supposedly "fixed" these errors, and advised Rottner that he should perform weekly diagnostic scans of his computer.

47.     After his 24-hour trial of the software expired, and believing that PC TuneUp's initial diagnosis and representations were honest and accurate, Rottner agreed to and, in fact, did pay AVG to purchase the full version of PC TuneUp in an effort to continue to protect his computer from and repair such errors and threats in the future. However, as discussed above, because PC TuneUp fabricated and/or dramatically overstated the errors and threats present on his computer—and was designed to always return these results—Rottner was misled into believing that his computer was at-risk, and that he needed to pay to register PC TuneUp in order to protect it in the future.

48.     Contrary to Defendants' representations, the full version of the PC TuneUp software that Rottner purchased could not and did not perform as represented. Instead, Defendants designed the software to invariably return false error-reports and misrepresent the actual health of his computer. Further, the software was incapable of repairing the reported errors

and problems. In fact, every time Rottner subsequently ran PC TuneUp, the software reported that his computer was afflicted with numerous "severe errors" and that he needed to "fix" the errors using PC TuneUp. Yet, despite the fact that he ran PC TuneUp's scan, and purportedly "fixed" the reported errors, his computer continued to suffer from the same problems he experienced prior to purchasing and running the software (i.e., reduced speed and overall performance, freezing, and a slower than usual Internet connection). Furthermore, Rottner observed a marked decline in the speed and performance of his computer after purchasing and running the full version of PC TuneUp.

49.     In or around November 2012, Rottner contacted AVG via telephone to complain about his problems with PC TuneUp. AVG responded by advising Rottner to download updated PC TuneUp software. Heeding AVG's advice, Rottner installed the update from AVG's website. Immediately after running the updated software and attempting to fix the so-called errors that it detected, Rottner's computer froze. When Rottner attempted to restart the computer he was presented with a system dialog box informing him that a problem was detected and required Windows to be shut down to prevent further damage to his computer.

50.     In order to regain use of his computer, Rottner was forced to fully reformat his hard drive—the digital repository containing valuable personal and professional information that he had saved—and reinstall the Windows operating system.

51.     But for Defendants' misrepresentations in their marketing materials, on the www.avg.com website and within the PC TuneUp software itself—namely, that (i) the software would accurately detect, report and repair harmful errors and other problems, (ii) his computer suffered from numerous "severe" errors, (iii) his computer required weekly scans, and (iv) purchasing the full version of PC TuneUp would ensure continued repair of and protection from

these purported harmful errors—Plaintiff would not have purchased the full version of PC
TuneUp.

## CLASS ALLEGATIONS

52. **Class Definition:** Plaintiff Rottner brings this action pursuant to Fed. R. Civ. P.
23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as
follows:

> All individuals and entities in the United States and its territories that have
> purchased PC TuneUp from AVG Technologies USA, Inc. and/or AVG
> Technologies CZ, s.r.o.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents,
successors, predecessors, and any entity in which Defendants or their parents have a controlling
interest and their current and former employees, officers, and directors, (2) the Judge or
Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's
immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons
whose claims in this matter have been finally adjudicated on the merits or otherwise released,
and (5) the legal representatives, successors, or assigns of any such excluded person.

53. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this
time, but on information and belief, Defendants have sold PC TuneUp software to thousands of
Class members throughout the country, making joinder of each individual member
impracticable. Ultimately, the Class members will be easily identified through Defendants'
records.

54. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the
Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful
conduct during transactions with Plaintiff and the Class.

14

55.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

56.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

a)      whether Defendants intentionally designed the PC TuneUp software to automatically report that harmful errors and threats exist on a user's computer, regardless of the computer's actual condition;

b)      whether Defendants intentionally misrepresented the functionality of the PC TuneUp software;

c)      whether AVG's conduct described herein constitutes breach of express warranties under the Massachusetts Commercial Code;

d)      whether AVG's conduct described herein constitutes breach of implied warranties of merchantability under the Massachusetts Commercial Code;

e)      whether Defendants' conduct described herein constitutes fraudulent inducement;

f)      whether AVG's conduct described herein constitutes a breach of contract;

g)      whether AVG's conduct described herein constitutes breach of the implied covenant of good faith and fair dealing; and

h)      whether Defendants unjustly received and/or continue to receive money as a result of the conduct described herein, and whether under principles of equity and good conscience, Defendants should be permitted to retain those monies.

57.     **Superiority:** This class action is appropriate for certification because class

proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

58.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

59.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

Definition" based on facts learned in discovery.

## FIRST CAUSE OF ACTION
### Breach of Express Warranties
### Pursuant to Mass. Gen. Laws ch. 106 § 2-313
### (On Behalf of Plaintiff and the Class Against AVG US and AVG CZ)

60.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

61.     Licenses to use consumer software are "goods" within the meaning of Uniform

Commercial Code Art. 2 and Mass. Gen. Laws ch. 106 § 2-105. Accordingly, when AVG sold

Rottner the PC TuneUp software in or around February 2012, the transaction was a sale of goods

within the meaning of the UCC Art. 2, and Mass. Gen. Laws ch. 106 § 2-105.

62.     Under Mass. Gen. Laws ch. 106 § 2-313, AVG's sale of PC TuneUp included

express warranties created by AVG's affirmations of fact and promises made through AVG's

advertising, websites, product packaging, and in-software representations.

63.     Through AVG's website, product packaging, marketing materials, and in-

software representations, AVG expressly represented to Plaintiff and the Class that PC TuneUp

would "scan your registry to identify and repair issues that may cause freezing and crashing."

AVG further represented that PC TuneUp would "Fix cluttered and corrupted registries that

consume memory, slow applications down, and cause overall stability problems," "Boost your

Internet speed," "Optimize disk speeds," "Protect your privacy," "Recover accidentally deleted

files," "Permanently delete files and wipe disks," and "Monitor hard drive health and space."

64.     Likewise, after Rottner installed both the free and full versions of PC TuneUp, the

software represented that his computer had dozens of "severe" errors, and that the software

would repair the supposed errors. PC TuneUp also informed Rottner that weekly scans of his

computer with the software were recommended in order to repair and protect against such

problems in the future.

65.     AVG's affirmations and promises to Plaintiff and the Class related to an essential characteristic of both the free and full versions of the PC TuneUp software—namely, the software's ability to accurately detect, report and repair computer errors, as well as improve the overall security and functionality of Plaintiff's and the Class members' PCs.

66.     Plaintiff and the Class relied upon these affirmations and promises by paying AVG to purchase and register a full version of PC TuneUp. AVG's representations described herein formed the basis of the bargain between the parties, in that Plaintiff and the Class reasonably believed that they were purchasing software that would honestly and accurately detect, report and repair harmful computer errors and threats, and fix them. But for AVG's affirmations and representations, Plaintiff and the Class would not have purchased the full version of PC TuneUp.

67.     AVG breached these express warranties by providing both free and full versions of PC TuneUp that did not perform any meaningful diagnostic test on Plaintiff's or the Class's computers, and instead falsely identified and exaggerated the presence of errors and threats.

68.     AVG's breach of express warranties injured Plaintiff and the Class because they purchased a product of diminished value—software that does not actually perform the beneficial tasks represented through AVG's affirmations and promises.

69.     As a direct and proximate result of AVG's breach of express warranties, Plaintiff and the Class members suffered damages—including in the form of the fees paid to purchase PC TuneUp—in an amount to be proven at trial. AVG had actual or constructive notice of such damages.

70.     Accordingly, Plaintiff and the Class members seek actual and compensatory

damages to the maximum extent available.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### Pursuant to Mass. Gen. Laws ch. 106 § 2-314
### (On Behalf of Plaintiff and the Class Against AVG US and AVG CZ)

71.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.     Licenses to use consumer software are "goods" within the meaning of Uniform Commercial Code Art. 2 and Mass. Gen. Laws ch. 106 § 2-105. Accordingly, when AVG sold Rottner the PC TuneUp software in February 2012, the transaction was a sale of goods within the meaning of the UCC Art. 2, and Mass. Gen. Laws ch. 106 § 2-105.

73.     Pursuant to Mass. Gen. Laws ch. 106 § 2-314, a contract for the sale of goods contains an implied warranty that the goods are merchantable. To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." § 2-314.

74.     Plaintiff and the Class, on the one hand, and AVG, on the other, entered into valid and enforceable agreements where by Plaintiff and the Class agreed to purchase, and AVG agreed to provide software that would honestly and accurately detect, report and repair harmful computer errors and threats.

75.     Implied within those contracts were AVG's representations that the PC TuneUp software would, in fact, be fit for identifying, reporting and repairing harmful errors and threats found on a user's computer. Likewise, AVG's online representations, representations found on PC TuneUp's product packaging, and representations within the software itself, imply that the software is designed to repair a computer, clean its registry, and improve its performance and security.

76.     AVG breached the implied warranty of merchantability because, in actuality, PC TuneUp is not fit to repair a computer, clean its registry, or improve its performance and security. Rather, both the free and full versions PC TuneUp are designed to identify "false positives" (i.e., to report problems that do not in fact exist) and/or to misrepresent the severity of problems found on the user's computer. Further, the full version of PC TuneUp is incapable of repairing the errors identified by the scan or otherwise performing as advertised by AVG. The full version of PC TuneUp is, therefore, unfit to perform the primary functions for which Plaintiff and the Class agreed to purchase it.

77.     At the time AVG sold PC TuneUp to Plaintiff and the Class, the software was not reasonably suitable for diagnosing and repairing computer errors and threats, cleaning computer registries, or improving computer performance and security.

78.     By using PC TuneUp as instructed by AVG, Plaintiff and the Class used the software in a manner that AVG intended and/or reasonably could have foreseen.

79.     AVG's breach of the implied warranty of merchantability injured Plaintiff and the Class because they purchased a product of diminished value—software that does not honestly and accurately diagnose and repair computer errors and threats, clean computer registries, or improve computer performance and security.

80.     As a direct and proximate result of AVG's breach of the implied warranty of merchantability, Plaintiff and the Class suffered damages—including in the form of the fees paid to AVG to purchase PC TuneUp—in an amount to be proven at trial. AVG had actual or constructive notice of such damages.

81.     Accordingly, Plaintiff and the Class members seek actual and compensatory damages to the maximum extent allowable.

**THIRD CAUSE OF ACTION**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

82.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

83.     As described with particularity in Paragraphs 14 through 51 and throughout all

Counts of this Complaint, Defendants have used, and continue to use, marketing tactics and in-

software representations they know or reasonably should know are false and misleading.

84.     To induce Plaintiff and the Class to purchase PC TuneUp, Defendants

affirmatively represented to Plaintiff and the Class that PC TuneUp possessed certain utility and

functionality. Specifically, AVG represented in its marketing materials and software packaging

that PC TuneUp would honestly and accurately identify, report and repair computer errors and

privacy and security threats, increase computer and Internet speeds, and increase computer

stability and functionality. Further, through the software itself, all Defendants affirmatively

represented that PC TuneUp had performed a meaningful diagnostic scan, that Plaintiff's and the

Class's computers had numerous serious errors, and that purchasing the full version of PC

TuneUp would repair and protect against such errors and threats in the future.

85.     Defendants' representations were, in fact, false. In particular, PC TuneUp does

not honestly identify and repair computer errors or privacy and security threats, increase

computer and Internet speeds, or increase computer stability and functionality as represented.

Likewise, PC TuneUp's "free diagnostic" scan results were false because PC TuneUp did not

perform an actual evaluation of errors existing on Plaintiff's and the Class's computers.

86.     The utility of a consumer good is a material term of any transaction because it

directly affects a consumer's choice of, or conduct regarding, whether to purchase a good.

87.     Any deception or fraud related to the utility of a good is materially misleading.

88.     Defendants knew that their representations regarding PC TuneUp's utility and functionality were false. Further, Defendants designed their public representations specifically to mislead consumers about PC TuneUp's utility, and intentionally programmed their software to falsely report and exaggerate the existence of errors and to deceive users about the status of their computers. Defendants intended that their misrepresentations would induce consumers to purchase their PC TuneUp software.

89.     As consumers lacking the requisite technical expertise to independently gauge PC TuneUp's underlying functionality, and taking PC TuneUp's error reports at face value, Plaintiff and the Class justifiably relied on Defendants' representations by purchasing and registering full versions of the PC TuneUp software. Plaintiff and the other members of the Class would not have purchased and registered a full version of PC TuneUp but for AVG's representations that the software would perform the beneficial tasks described herein above, and all Defendants' in-software representations that their computers had serious errors and needed ongoing repair.

90.     By using deceptive marketing tactics that misrepresent PC TuneUp's actual utility, and inducing Plaintiff and the Class to purchase PC TuneUp based on those misrepresentations, Defendants have engaged in fraudulent practices designed to mislead and deceive consumers.

91.     As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff and the Class suffered damages—including in the form of the fees paid to AVG for the purchase of the full version of the PC TuneUp software—in an amount to be determined at trial. Defendants had actual or constructive notice of such damages.

92.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class,

seeks an award of the maximum damages available.

### FOURTH CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiff and the Class Against AVG US and AVG CZ)**

93.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

94.     Plaintiff and the Class members, on the one hand, and AVG, on the other, entered into valid and enforceable agreements, whereby AVG offered to sell, and Plaintiff and the Class members agreed to purchase, software that would accurately identify, report and repair legitimate computer errors and other problems on Plaintiff's and the Class's computers, as well as improve the overall health and functionality of those computers.

95.     Plaintiff and the Class paid, and AVG accepted, the purchase price for the full version of PC TuneUp. Therefore, Plaintiff and the Class performed their obligations under the contracts.

96.     AVG breached their contractual obligations by providing Plaintiff and the Class with software that failed to perform a meaningful analysis of their computers; falsely identified and vastly overstated errors and threats on the computers; and that could not repair the identified errors as advertised.

97.     AVG's breaches of contract proximately caused Plaintiff and the Class economic injury and other damages—including in the form of the fees they paid to purchase a full version of the PC TuneUp software—because they purchased a good that does not perform as Defendants represented, and lacks the promised and paid-for utility.

98.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class Against AVG US and AVG CZ)**

99.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

100.     Plaintiff and the Class purchased PC TuneUp and allowed AVG to install the software on their computers in order to receive the purported benefits offered by PC TuneUp.

101.     AVG's agreement to sell software to diagnose and remove errors and threats from Plaintiff's and the Class's computers in exchange for fees is a valid and enforceable contract between Plaintiff and the Class on the one hand, and AVG on the other.

102.     AVG breached the provisions of their contracts with Plaintiff and the Class by failing to honor their obligation to provide software that honestly and accurately performed diagnostic and remedial operations.

103.     Massachusetts law recognizes the implied covenant of good faith and fair dealing in every contract.

104.     Thus, implicit in the contracts between AVG and Plaintiff and the Class were provisions that prevented AVG from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the contract. Further, AVG was obligated to comply with Mass. Gen. Laws ch. 106 §§ 2-313 and 2-314.

105.     AVG breached the implied covenant of good faith and fair dealing by selling Plaintiff and the Class software that could not perform as represented, failing to honestly and accurately inform consumers about the true condition of their computers, and further by failing to full comply with the proscriptions of applicable statutory law.

106.     AVG's misconduct and breach of the implied covenant of good faith and fair

dealing as described herein resulted in injury and damages to Plaintiff and the Class—including in the form of the fees they paid to purchase the full version of PC TuneUp—because they purchased a good that does not have the promised and paid-for utility.

107.     Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(in the alternative to Breach of Contract and Breach of the**
**Implied Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Class Against AVG US and AVG CZ)**

108.     Plaintiff incorporates by reference Paragraphs 1 through 92 as if fully set forth herein.

109.     Plaintiff expressly brings this claim in the alternative to his claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing.

110.     If the Court finds Plaintiff's and the Class's contracts with AVG invalid or unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy at law.

111.     Plaintiff and the Class members each conferred a benefit upon AVG in the form of the monies they paid to AVG to purchase the full version of PC TuneUp.

112.     AVG knowingly received and retained those benefits from Plaintiff and the Class under circumstances that would render it unjust to allow AVG to retain such benefits.

113.     In exchange for PC TuneUp's purchase price, Plaintiff and the Class members each reasonably expected to receive the benefit of software that would accurately identify, report and repair computer errors and threats, as represented by AVG.

114.     Because of AVG's representations to Plaintiff and the Class, AVG knew or

should have known that Plaintiff and the Class purchased PC TuneUp with the reasonable

expectation of receiving the software's aforementioned benefits in return. AVG knew that

Plaintiff's and the Class's expectations were inaccurate—and AVG as responsible for that

inaccuracy—yet AVG sold PC TuneUp to Plaintiff and the Class without correcting that

expectation.

115.    By falsely informing Plaintiff and the Class that they needed to purchase PC

TuneUp to repair problems on their computers that did not exist or were dramatically overstated,

AVG knowingly received and appreciated benefits at the expense, and to the detriment, of

Plaintiff and the Class.

116.    AVG's receipt of monies from Plaintiff and the Class allowed AVG to utilize

those monies for its own purposes, without expending resources to perform AVG's obligations to

them.

117.    Under principles of equity and good conscience, AVG should not be permitted to

retain the monies Plaintiff and the Class members paid to and were unjustly received by AVG as

a result of the misconduct alleged herein.

118.    Accordingly, Plaintiff, on behalf of himself and the other members of the Class

seek restitution and disgorgement of all monies unlawfully obtained by AVG through its

misconduct alleged herein.

<u>SEVENTH CAUSE OF ACTION</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class Against Auslogics)**

119.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

120.    Plaintiff and the Class members each conferred a benefit upon Auslogics in the

form of the monies they paid to AVG, which were shared with Auslogics, to purchase the full version of PC TuneUp.

121.    Auslogics knowingly received and retained a portion of the monies paid by Plaintiff and the Class under circumstances that would render it unjust to allow Auslogics to retain such benefits.

122.    In exchange for PC TuneUp's purchase price, Plaintiff and the Class members each reasonably expected to receive the benefit of software that would accurately identify, report and repair computer errors and threats, as represented by Auslogics through its in-software representations.

123.    Because of Auslogics in-software representations to Plaintiff and the Class, Auslogics knew or should have known that Plaintiff and the Class purchased PC TuneUp with the reasonable expectation of receiving the software's aforementioned benefits in return. Auslogics knew that Plaintiff's and the Class's expectations were inaccurate—and that it was responsible for that inaccuracy—yet Auslogics continued to accept its portion of the purchase price of the software paid to AVG without correcting that expectation.

124.    By falsely informing Plaintiff and the Class that they needed to purchase PC TuneUp to repair problems on their computers that did not exist or were dramatically overstated, Auslogics knowingly received and appreciated benefits at the expense, and to the detriment, of Plaintiff and the Class.

125.    Auslogics receipt of a portion of the monies paid by Plaintiff and the Class allowed it to utilize those monies for its own purposes, without providing the software it represented Plaintiff and the Class would receive.

126.    Under principles of equity and good conscience, Auslogics should not be

27

permitted to retain the portion of the monies Plaintiff and the Class members paid that it unjustly received as a result of its misconduct alleged herein.

127.   Accordingly, Plaintiff, on behalf of himself and the other members of the Class seek restitution and disgorgement of all monies unlawfully obtained by Auslogics through its misconduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Rottner, on behalf of himself and the Class, respectfully requests that the Court enter an order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Christopher Rottner as Class Representative, and appointing his counsel as Class Counsel;

B.   Awarding damages, including actual, compensatory, statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

C.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*: (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein, (ii) requiring Defendants to disclose and admit the wrongful and unlawful acts described herein, and (iii) requiring Defendants to fully disclose the true nature of their software products now and in the future;

D.   Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.   Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

F.   Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**CHRISTOPHER ROTTNER**, individually and on behalf of all others similarly situated,

Dated: February 27, 2013      By: /s/ Benjamin H. Richman
                                             One of Plaintiff's Attorneys

                                             JAY EDELSON (*Pro Hac Vice*)
                                             jedelson@edelson.com
                                             RAFEY S. BALABANIAN (*Pro Hac Vice*)
                                             rbalabanian@edelson.com
                                             BENJAMIN H. RICHMAN (*Pro Hac Vice*)
                                             brichman@edelson.com
                                             CHANDLER R. GIVENS (*Pro Hac Vice*)
                                             cgivens@edelson.com
                                             EDELSON MCGUIRE, LLC
                                             350 North LaSalle Street, Suite 1300
                                             Chicago, Illinois 60654
                                             Telephone: (312) 589-6370
                                             Facsimile: (312) 589-6378

                                             David Pastor (BBO# 391000)
                                             dpastor@pastorlawoffice.com
                                             PASTOR LAW OFFICE, LLP
                                             63 Atlantic Avenue, Third Floor
                                             Boston, Massachusetts 02110
                                             Telephone: (617) 742-9700
                                             Facsimile: (617) 742-9701

## <u>CERTIFICATE OF SERVICE</u>

    I, Benjamin H. Richman, an attorney, hereby certify that on February 27, 2013, I served the above and foregoing ***Plaintiff's Second Amended Class Action Complaint*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 27th day of February 2013.

                                          /s/ Benjamin H. Richman