UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10920-RGS

CHRISTOPHER ROTTNER, individually
and on behalf of others similarly situated

v.

AVG TECHNOLOGIES USA, INC.; AVG TECHNOLOGIES CZ, S.R.O.;
and AUSLOGICS SOFTWARE PTY LTD.

MEMORANDUM AND ORDER ON AVG TECHNOLOGIES, INC. AND
AVG TECHNOLOGIES CZ, S.R.O.'S MOTIONS TO DISMISS

May 3, 2013

STEARNS, D.J.

In this proposed class action, plaintiff Christopher Rottner, individually and on behalf of others alleged to be similarly situated, seeks to sue the makers and distributors of AVG PC TuneUp software.  Rottner claims that defendants AVG Technologies USA Inc. (AVG US), AVG Technologies CZ, S.R.O. (AVG CZ), and Auslogics Software Pty Ltd., falsely touted the features of PC TuneUp, thereby inducing computer users to purchase software that did not perform as advertised. AVG US and AVG CZ[1] move to dismiss Rottner's Second Amended Complaint (SAC)[2] pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims for which relief

_____

[1] Auslogics has not yet appeared in this action.

[2] Rottner was substituted for Dale Theis as the lead plaintiff in the SAC.

may be granted.

## BACKGROUND

PC TuneUp is software advertised to optimize a computer's performance by scanning the operating system and removing and fixing harmful errors.  Auslogics, an Australian company that designs, creates, sells, and licenses computer software, is responsible for the design and development of the architecture underlying PC TuneUp.  The AVG family of companies sells computer security and related software. AVG CZ, located in the Czech Republic, licensed the PC TuneUp technology from Auslogics.  AVG CZ markets and sells PC TuneUp within the United States and elsewhere through a website, www.avg.com.   AVG US, a sister company incorporated in Delaware with its headquarters in the Commonwealth of Massachusetts, is responsible for retail store and reseller channel sales of PC TuneUp in the United States.  AVG US also assists in the maintenance of the www.avg.com website and reviews marketing statements posted on the site.

Rottner is a resident of California.  In February of 2012, Rottner's computer began malfunctioning – its speed and performance decreased, and the system sometimes hanged when opening programs.   The internet speed also appeared sluggish.  Rotter searched for software that would repair the internal problems and boost the computer's overall performance.  His search turned up an advertisement for

a free trial of PC TuneUp, which, in turn, led to the www.avg.com website. The website claimed that PC TuneUp would boost internet speed, eliminate freezing and crashing, optimize disk space and speeds, extend battery life, protect privacy, monitor hard drive health, and restore the PC to its peak performance.

Rottner downloaded, installed, and ran the trial version of PC TuneUp. The diagnostic scan reported critical errors on Rottner's computer. PC TuneUp then reported that it had repaired these errors, and advised Rottner to perform weekly scans of his computer to maintain and increase its performance. Rottner, relying on the representations made by PC TuneUp, purchased and installed the full version of the software.[3] However, the weekly scans did not resolve Rottner's computer problems – his PC continued to suffer from reduced speed and sluggish performance, freezing, and tortoise-like internet access. Rottner also observed that the installation of the full version of PC TuneUp led to no significant improvement in his PC's performance.

In November of 2012, Rottner contacted AVG and complained about his problems with PC TuneUp. AVG told Rottner to download a recent update of the PC

---

[3] During the purchase and installation process, Rottner accepted the mandatory End User License Agreement (EULA). Dkt # 50 at 2.

TuneUp software.[4] After downloading, installing, and running the update, Rottner's computer completely froze. When Rottner attempted to reboot the computer, a Windows message told him that a problem had been detected and that Windows would automatically shut down to prevent further damage to his computer. To restore his PC to working condition, Rottner had to fully reformat his hard drive – losing various personal files in the process – and reinstall the Windows operating system.

Rottner alleges that defendants falsely inflated PC TuneUp's capabilities to induce consumers to purchase the software. Rottner's counsel retained a computer forensics expert who concluded that the trial version of PC TuneUp consistently reported that a tested PC suffered from multiple problems regardless of its actual health, exaggerated the number of errors found on the computer, characterized all listed problems as severe, and always proposed weekly scans with the full to-be-purchased version of PC TuneUp as the only viable cure. Rottner alleges six causes of action against the AVG defendants: breach of express warranty pursuant to Mass. Gen. Laws ch. 106, § 2-313 (Count I); breach of the implied warranty of merchantability pursuant to Mass. Gen. Laws ch. 106, § 2-314 (Count II); fraudulent inducement (Count III); breach of contract (Count IV); breach of the implied

---

[4] The SAC does not specify whether Rottner contacted AVG CZ or AVG US. At the hearing, however, counsel stated that Rottner made his initial complaint to AVG US.

covenant of good faith and fair dealing (Count V); and unjust enrichment (Count VI).[5]  The AVG defendants move to dismiss all counts in which they appear for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  The court heard oral argument on April 30, 2013.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 559 (2007); *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008).  As the Supreme Court has emphasized, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

### *Applicable Law*

The threshold dispute is over the substantive law to be applied.  Defendants contend that Delaware state law is controlling because the EULA to which Rottner agreed at the time of the purchase of PC TuneUp specifies that "[t]his Agreement will

---

[5] Rottner also alleges a separate count of unjust enrichment against Auslogics.

be governed by the laws of the State of Delaware." EULA § 10f.[6] Rottner does not

dispute that he accepted the EULA, *see* Dkt # 52 at 2, but argues that the EULA's

choice of law (Delaware) provision is contrary to Massachusetts public policy.

In a diversity action, as is the case here, a federal court applies the choice-of-

law rules of the forum state – in this case, Massachusetts. *Klaxon v. Stentor Electric*

*Mfg. Co.*, 313 U.S. 487, 496 (1941). "Massachusetts law has recognized, within

reason, the right of the parties to a transaction to select the law governing their

relationship." *Morris v. Watsco, Inc.*, 385 Mass 672, 674 (1982). However,

Massachusetts courts will not honor a choice-of-law provision when its application

"would be contrary to a fundamental policy of a state which has a materially greater

interest than the chosen state in the determination of the particular issue and which

. . . would be the state of the applicable law in the absence of an effective choice of

law by the parties." *Shipley Co., Inc. v. Clark*, 728 F. Supp. 818, 825 (D. Mass.

1990), quoting Restatement (Second) of Conflict of Laws § 187(2)(b) (1971).

Rottner asserts that Massachusetts law should apply because the EULA, which

disclaims all implied warranties, *see* EULA § 5c, is contrary to the Massachusetts

---

[6] The EULA also specifies that "[t]he exclusive jurisdiction for any dispute will be state or federal courts sitting in the State of Delaware." *Id.* However, by agreement the parties have waived this provision of the EULA while reserving the right to dispute the applicability of the remaining provisions. *See* Dkt # 52 at 2-4.

public policy of offering the fullest possible legal protections to consumers, including a prohibition against the disclaiming by sellers of the implied warranty of merchantability in consumer contracts. *See* Mass. Gen. Laws ch. 106, § 2-316A ("Any language, oral or written, used by a seller or manufacturer of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify the consumer's remedies for breach of those warranties, shall be unenforceable with respect to injury to the person."). In contrast, as defendants note in their briefs, Delaware law does permit the disclaimer of implied warranties. *See* Del. Code tit. 6, § 2-316 ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'"). Thus, according to Rottner, applying Delaware law in this case would be "contrary to a fundamental policy of" Massachusetts, and moreover, that Massachusetts has a "materially greater interest" in the outcome of the case than does Delaware because AVG US is headquartered in Massachusetts.

While the argument is superficially appealing, it is based on a fundamentally mistaken premise. As defendants correctly point out, the public policy exception compares the law of the contractually chosen state, not with the law of the forum state, but with the "state of the applicable law in the absence of an effective choice of law by the parties," *Shipley*, 728 F. Supp. at 825 (which state defendants contend is California). In determining the state whose law is to be applied absent a controlling contractual choice, Massachusetts has adopted the "functional" choice-of-law analysis taught by the Restatement (Second) of Conflict of Laws. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631 (1985).

> [I]n the absence of a choice of law by the parties, their rights "are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." [Restatement (Second) of Conflict Laws] at § 188(1). "[T]he contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* at § 188(2). Factors under § 6 that are said to be relevant to the choice of the applicable rule of law include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* at 632.

This analysis leads inescapably to the conclusion that Massachusetts would apply California law, and not Massachusetts law, in deciding the enforceability of the disclaimer provisions of the EULA. Rottner is a resident of California who purchased a license from AVG to install PC TuneUp in his computer, all of which occurred in California. The EULA states that the contract is between the purchaser and AVG CZ and not AVG US. AVG CZ is a company formed under the laws of the Czech Republic. EULA § 1d. Thus, for choice of law purposes, the contract was formed, negotiated, and performed in California. Although Rottner has named AVG US, which is based in Massachusetts, as a defendant, Rottner has not made any specific allegations linking any action or omission on the part of AVG US to his decision to purchase and install PC TuneUP. Rottner's expectation that he was visiting a web site based in the United States (based on the website's IP address) does not alter the analysis, as the EULA specifically identifies AVG CZ as Rottner's contractual partner.[7]

Although California may have a greater interest than Delaware in Rottner's

---

[7] Rottner also argues that his choice of Massachusetts as a forum for the litigation vitiates California's interest in his claims. However, a litigant's choice of forum is not an appropriate factor in the choice-of-law analysis. Indeed, allowing a litigant's choice of forum to determine the law to be applied would simply encourage impermissible forum shopping.

personal claims involving his purchase and use of PC TuneUp, there is no conflict between California and Delaware law on the validity of a disclaimer by a seller of implied warranties. California law permits the disclaimer of implied warranties under the same terms and conditions as Delaware law. *See* Cal. Com. Code § 2316 ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'"). Thus, under Massachusetts choice-of-law principles, the contractually chosen law – that of the state of Delaware – applies in this case because it "would [not] be contrary to a fundamental policy of a state . . . which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Shipley*, 728 F. Supp. at 825.

### Claims against AVG US

AVG US moves to dismiss all claims against it because it did not sell PC TuneUp to Rottner and was not a party to the EULA between Rottner and AVG CZ. For ths reason, it argues that Rottner's contract-based claims (express warranty, implied warranty, breach of contract, and breach of the implied covenant of good

faith and fair dealing) against AVG US necessarily fail.  Further, because AVG CZ's relationship with Rottner is fully defined and regulated by the terms of the EULA, the claim for unjust enrichment also fails.  *See BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009) ("If a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied.").[8]  Finally, the claim for fraudulent inducement (like the express warranty claim) also collapses because it was AVG CZ, and not AVG US, that made the allegedly fraudulent statements on which Rottner relied.

For his part, Rottner alleges that AVG US reviewed the marketing materials placed on the www.avg.com website (including the allegedly fraudulent statements), was a party to the "Privacy Policy" published on the website,[9] and also reviewed the licensing agreements for the AVG brand, such as the one with Auslogics. Additionally, Rottner contends that AVG US and AVG CZ are mere alter egos and should be treated as such for purposes of liability.  He notes that AVG CZ and AVG US are owned by the same corporate parent, are "pervasively controlled" by the same

---

[8] Rottner also has not identified any benefit AVG US allegedly received from his purchase of PC TuneUp, a critical element of any claim of unjust enrichment.

[9] What this "Privacy Policy" was or why it is relevant to Rottner's claims is not made clear in the SAC.

corporate officers and employees, and have significantly commingled their efforts to promote the sale of PC TuneUp in the United States.

Neither of these arguments has persuasive force.  While AVG CZ sells PC TuneUp through a website, the content of which AVG US is alleged in some minimal respects to review, Rottner has made no plausible connection between AVG US's review of the material (it is not clear whether any such review is alleged to take place before or after the material is posted) and his decision either to purchase PC TuneUp, or in the process, to agree to the terms of the EULA.  The alter ego theory fares no better.  "For the alter ego theory, Delaware courts have looked to the law of the entity in determining whether the entity's separate existence is to be disregarded."  *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at \*11 (Del. Ch. Sept. 2, 2008) (citation omitted).  Because AVG US is incorporated in Delaware, the court looks to Delaware law in this regard.  Under Delaware law (as under Massachusetts law), "[i]t is only the exceptional case where a court will disregard the corporate form."  *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990).

> Some specific facts a court may consider when being asked to disregard the corporate form include: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant

12

shareholder.

*EBG Holdings*, 2008 WL 4057745, at *12.  Rottner has not alleged any facts to support the naked allegation that AVG US was operated as a "facade" for AVG CZ or that it did not adhere to basic corporate formalities in its day-to-day operations. Perhaps of greater significance, Rottner has failed to show "fraud, injustice, or inequity in the use of the corporate form."  *Sears*, 744 F. Supp. at 1304.

> [T]he alleged fraud or inequity must be distinct from the tort alleged in the complaint.  Any breach of contract and any tort – such as patent infringement – is, in some sense, an injustice. . . .  The underlying cause of action does not supply the necessary fraud or injustice.  To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.

*Id.* at 1305.  The only inequity Rottner suggests is that if deprived of the domestic defendant (AVG US), he would then have to litigate against two foreign corporations against whom a judgment might prove difficult to collect should he prevail. However, to the extent the argument has any bearing, it simply casts doubt on the wisdom of the underlying transaction, which is not a valid consideration in any piercing of the corporate veil analysis.  In sum, because Rottner has not alleged claims against AVG US for which relief may be granted, these claims will be dismissed.

13

*Claims against AVG CZ*[10]

Defendants contend that the claims for breach of express and implied warranties are inapplicable in this case because those claims are pled under Article 2 of the Uniform Commercial Code (UCC), which covers sales of goods, *see* Del. Code tit. 6, § 2-102, whereas software – the subject of this dispute – is not, according to AVG CZ, a "good" under Delaware law.  AVG relies on two cases – *Neilson Bus. Equip. Ctr., Inc. v. Italo V. Monteleone., M.D., P.A.*, 524 A.2d 1172 (Del. 1987), and *Wharton Mgmt. Grp. v. Sigma Consultants, Inc.*, 1990 WL 18360 (Del. Super. Ct. Jan. 29, 1990), aff'd 582 A.2d 936 (Del. 1990) – for this proposition.

In *Neilson*, the court held that a lease for computer hardware, software, and support services was predominantly a contract for goods, and thus came under the rubric of Article 2 of the UCC.  *Neilson*, 524 A.2d at 1174-1175.  However, the court left open the question of whether the sale of software alone would be considered a sale of a good under Article 2.  In *Wharton*, the court distinguished *Neilson* and found that the sale of customized software was a contract for services, and not goods, under the UCC.  *Wharton*, 1990 WL 18360, at *2-3.

Rottner distinguishes the sale of a software package, as in this case, with cases

---

[10] Having determined that Delaware law applies, the claims made under Massachusetts law will be recast as equivalent claims under Delaware law.

14

involving the design of software or the transfer of intellectual property.  Although the Delaware courts have not directly addressed this distinction, courts nationally have consistently classified the sale of a software package as the sale of a good for UCC purposes.  *See, e.g., ePresence, Inc. v. Evolve Software, Inc.*, 190 F. Supp. 2d 159, 163 (D. Mass. 2002) (applying California law); *Micro Data Base Sys. Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 654 (7th Cir. 1998) (applying New Hampshire law); *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 675-676 (3d Cir. 1991) (applying Pennsylvania law, and noting that the majority of academic commentary supports the view that software fits with the definition of a good under the UCC); *Newcourt Fin. USA, Inc. v. FT Mortg. Cos.*, 161 F. Supp. 2d 894, 897-898 (N.D. Ill. 2001) (applying Illinois law); *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 432 (S.D.N.Y. 1996) (applying New York Law); *Olcott Int'l & Co. Inc. v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1071 (Ind. App. 2003).

Rottner's is the more persuasive view of this dispute.  Software is not clearly a good or a service in the abstract, and may qualify as either depending on the particular circumstances of the case.  *See RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985) ("Because software packages vary depending on the needs of the individual consumer, we apply a case-by-case analysis.").  Delaware, like other jurisdictions that have adopted the UCC, applies a "predominance" test to determine

whether a contract is for goods or services.  *See Neilson*, 524 A.2d at 1174.

The holding of *Neilson* turned on the fact that the contract involved the sale of tangible hardware along with software and services, and thus is readily distinguishable from this case.  However, PC TuneUp also bears no resemblance to the custom designed software in *Wharton*.  In *Wharton*, the programmer had to "prepar[e] a study of [the customer]'s existing operations, to design, develop, and install computer software which would meet [his] specific needs and objectives." *Wharton*, 1990 WL 18360, at * 2.  In essence, "it was [the programmer's] knowledge, skill and ability for which Wharton bargained . . . [and] purchased in the main . . . . The means of transmission is not the object of the agreement." *Id.*, at *3.  In contrast, PC TuneUp is a "generally available standardized software." *Olcott*, 793 N.E.2d at 1071 (distinguishing "the development of a software program to meet a customer's specific needs" as a contract for services).  Thus, the sale of PC TuneUp is more like the sale of a tangible good – it is "movable at the time of identification to the contract for sale." Del. Code. tit. 6, § 2-105.  Indeed, Rottner was able to download and install the full version of PC TuneUp after a one-stop payment over the internet.  Because the sale of PC TuneUp is predominantly like the sale of a good rather than the

16

provision of services, the UCC warranty provisions apply.[11]

Defendants argue that even if the UCC is applicable, Rottner has failed to make out a claim for breach of express warranties. Section 5a of the EULA warranties for a period of 30-days after purchase (i) that "the medium (if any) on which the [s]oftware is delivered will be free of material defects" and (ii) that "the software will perform substantially in accordance with the applicable specification."[12] Defendants point out that Rottner does not allege a material defect in the delivery medium, and does not identify any applicable specifications to which PC TuneUp allegedly fails to conform. Moreover, even assuming that Rottner has made out a claim, he failed to provide adequate pre-suit notice of the defects as required by Del. Code tit. 6, § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

_____

[11] AVG CZ also cites to *Attachmate Corp. v. Health Net, Inc.*, 2010 WL 4365833, at *2 (W.D. Wash Oct. 26, 2010), for the proposition that "[t]he weight of the authority favors application of common law and not the UCC with regard to software licenses."). However, that case involved a claim of copyright infringement, a dispute over intellectual property which is definitively not a "good" under the UCC. *See Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1359 n.2 (Fed. Cir. 2005). There is no suggestion that the purchase of PC TuneUp in this case involved any transfer of intellectual property.

[12] Section 5c of the EULA disclaims all other warranties not expressly provided, and section 10c of the EULA, an integration clause, disavows any previous representations.

Rottner agrees that he is not claiming a material defect in the software delivery medium, as the software was successfully downloaded from the internet. However, Rottner contends that because the "applicable specification" language of the EULA is vague and undefined, the only rational recourse for the consumer is to turn to the advertising claims and the claims broadcast by PC TuneUp itself as the "applicable specifications." This argument has force in view of Delaware's endorsement of the UCC's liberal approach to express warranty provisions. *See Bell Sports, Inc. v. Yarusso*, 759 A.2d 582, 592 (Del. 2000). In particular, "a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description . . . ." *Id.*, quoting UCC § 2-313 cmt. 4.

Moreover, I am confident that the Delaware courts would consider PC TuneUp's claimed functionality as an express warranty separate and apart from the EULA's content-less warranty provisions. In *Bell Sports*, the Court found that a bicycle helmet manual's attempt to disclaim express warranties was invalid where elsewhere in its pages the manual proclaimed the functionality of the helmet. *Bell Sports*, 759 A.2d at 591-593. Here, although the EULA disavowed previous representations, PC TuneUp software trumpets announcements about its functionality (which track the internet advertising claims) each and every time it is run. These

18

claims, therefore, also form an express warranty on which Rottner may properly allege to have relied.[13]

With respect to the reasonableness of his notice to AVG as to the alleged defects in PC TuneUp, Rottner is correct that this is a question of fact that cannot be resolved on a motion to dismiss. *See Speakman Co. v. Harper Buffing Mach. Co., Inc.*, 583 F. Supp. 273, 278 (D. Del. 1984) ("The question of timeliness and adequacy of notice is a factual question which can be decided as a matter of law only if the undisputed facts and the inferences that can be drawn therefrom permit only one interpretation."). Here, Rottner contacted AVG in November of 2012 to complain about PC TuneUp's nonfunctionality, that is, nine months after the purchase. Whether this notice was a timely warning to AVG CZ that "it might be answerable to [Rottner] for breach of contract and of warranty" is a question of fact for later adjudication.[14] *Id.* at 277.

Defendants are correct, however, that the EULA more successfully disclaimed any implied warranty. As discussed earlier, Delaware law permits the disclaimer of

---

[13] Because the express warranties form a basis of the parties' bargain, Rottner has also fairly alleged claims for breach of contract and the implied covenant of good faith and fair dealing. In light of the viable contract claims at law, it is unnecessary for the court to consider his alternative equitable claim for unjust enrichment.

[14] Rottner also argues that AVG CZ must have had constructive notice of the defects in PC TuneUp because it is a sophisticated business and has sold this software to consumers over a long period of time.

the implied warranty of merchantability if the disclaimer is conspicuous (and mentions merchantability). Del. Code tit. 6, § 2-316. Delaware law also permits the disclaimer of the implied warranty of fitness if the disclaimer is in writing and conspicuously displayed. *Id.* Here, the EULA presents the disclaimer in capital letters in section 5c, and specifically identifies both the implied warranties of merchantability and fitness. Consequently, Rottner's claim for any breach of implied warranty will be dismissed.

Finally, defendants contend that Rottner's claim for fraudulent inducement fails because it is not pled with the requisite particularity required by Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."). Specifically, defendants argue that Rottner did not identify with particularity the misrepresentations on which he purportedly relied, did not adequately plead that the statements were false, and did not adequately plead that the false statements were made with the intent to deceive. On review of the SAC, the court disagrees. Rottner pleads that he relied on the statements from the www.avg.com website that PC TuneUp would "boost Internet speeds," "eliminate freezing and crashing," and "optimize disk speeds," in choosing to download the free trial, SAC ¶¶ 45-46, and that he further relied on the software's representation that it would continuously

repair his computer's errors if he performed the recommended weekly scans. *Id.* ¶¶ 46-47.  Rottner adequately alleges that these statements are false based on the report of his forensics expert that the PC TuneUp software consistently reports numerous and severe errors regardless of the health of the computer, and never recommends anything other than the weekly scans.[15] *Id.* ¶¶ 37-40.  Finally, Rottner adequately alleges that AVG CZ knew that its marketing materials regarding PC TuneUp were false and that it set out to induce consumers to purchase the software despite this knowledge.[16] *Id.* ¶ 88.  Because the fraud claim is pled with sufficient particularity, it survives the motion to dismiss.

ORDER

For the foregoing reasons, AVG US's motion to dismiss will be <u>ALLOWED</u>. AVG CZ's motion to dismiss will be <u>ALLOWED</u> as to Count II (breach of implied warranties), and <u>DENIED</u> as to the remaining counts.

SO ORDERED.

---

[15] Rottner also alleges that some of these claims are scientifically impossible. *See id.* ¶ 26.

[16] AVG CZ argues that the bulk of Rottner's allegations of fraudulent intent go to the design of the software, which he alleges is attributable to Auslogics, and that the claim therefore does not involve AVG CZ.  However, during oral argument AVG CZ agreed that an intermediary seller would also have a duty to consumers to avoid making misrepresentations about its products that it knew or should have known were false.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE